Good morning. May it please the Court, I'm Philip Lease for the Appellant John Orsini. With me at the Council Table is Stephen Rafferty. This is the case about the shipyard that deliberately waited over four years after allegedly furnishing goods and services to a landing craft before filing suit in federal court and arresting the vessel. In the meantime, my client had engaged in at least two costly lawsuits in pursuit of the vessel. Was one of the lawsuits initiated after the filing of the lien action? Oh, no. Both of them were initiated before the filing of the lien and the arresting of the vessel? Oh, yes. Now, when you say filing of the lien, Your Honor, filing of the lawsuit to enforce the lien occurred on October 9th, 2001. Filing of the notice of claim of lien with the National Vessel Documentation Center occurred between the two suits. And that filing of the notice of claim of lien, which, as we noted in our brief, is not constructive notice to Orsini, occurred on November 24th, 1997, which coincidentally or not coincidentally was just a few days after Orsini got his first judgment in the first case on November 17, 1997. You spoke of allegedly furnishing services. Isn't that a fact? Hasn't that been found? That judge granted summary judgment to Honolulu Marine to the effect that it did indeed furnish the goods and services and satisfied all of them. Are you challenging that? Yes, Your Honor. One of our issues on appeal is that HMI was improperly granted summary judgment because there were issues of fact as to just to whom or on whose order the goods and services … There were subcontractors. There were issues. There were even markups which are not related to any goods or services furnished by Honolulu Marine. And so those factual issues were all very much unresolved. And so we have appealed that. And I don't propose to dwell on that at any great length because it is adequately briefed. I think … So, Kelsey, you're saying that the people who did the custodial tasks, are you saying that that's not related to the maritime lien? Is that your argument? Well, in response to HMI's motion for summary judgment to the effect that it had indeed furnished necessaries, goods and services to the vessel, we put up a factual record in opposition based primarily upon the deposition testimony of HMI's principal witness to the fact that he really couldn't substantiate who ordered this part or this service. He couldn't tell who had performed the labor for which the vessel was being charged. He actually testified that his company relied primarily upon the owner and the person of Ivan Toyama for payment. In fact, that was the reason why they deliberately delayed for four years because they were in contact with him and they thought that he would pay. And so there was a significant issue about relying upon the credit of the vessel, which is statutorily required in order for HMI to have a lead. And so there were unresolved factual issues that the judge just paved over in granting them summary judgment. Was that a factual issue, relying on the credit of the vessel? Yes, it is. That's a factual issue? Yes. So you're saying that there's an element of summary judgment and there was a bench trial, right? That's right. Because the judge did not resolve by summary judgment the issue of latches. And we have error there because we cross-moved for summary judgment for the court to find that there was latches. And the latches derives because of the great delay in acting. Because the applicable or analogous rather statute of limitations was only two years and they were not sued, the presumption of latches was there. That transferred to HMI the burden of proof to show two things, or to show a... It may have transferred, unless the record affirmatively on its face shows the reason. Isn't that so? The record affirmatively on its face, I like to go to that because the analogous statute of limitations having expired by reason of the fact shown in the complaint, HMI had a burden under Ninth Circuit law, which is consistent with other circuits, to allege its excuse for why it was coming in so late. It alleged that the last services or goods were furnished on June 7th, I think it was, 1997. And clear on the face of the complaint, it was filed on October 9, 2001, over two years later, or four years later. So they had a duty under well-established Ninth Circuit precedent to allege their excuse. And we brought this up repeatedly. They never, ever alleged an excuse. At trial, when they wanted to put on evidence of an excuse, we objected because there was no pleading to end at this point to conform to the proof because the issue was not even implicitly tried by agreement. So at summary judgment stage, HMI had the burden of showing an excuse, and it had a burden of showing no prejudice. It brought forward no evidence whatsoever. Now, the bench trial, both issues were raised, right? Both issues were decided by the court. Both issues were decided by the court. And as I say, at the trial, all of the evidence about excuse was admitted over objection. So there was no pleading to support the excuse. There was no allocation. Well, suppose we just stick for the moment to prejudice. A bench trial results in a finding there was no prejudice to Orsini. That's right. And there I was the judge wrong. I'd like to focus on particularly some legal errors that are very out of date. Why was the judge wrong finding no prejudice? Because he excluded the evidence of prejudice for expenses that Orsini incurred during the two-year statute of limitations period. For prejudice analysis, prejudice accrues before the statute runs out and after the statute runs out. That's the Sandvik case. And the Madrona case out of the District of Alaska, I believe, says the same thing. So that was a clear error on his part, a legal error to turn a blind eye to some 65, $68,000 worth of expenses that Orsini incurred pursuing the vote during the first two-year period after HMI's lien rights allegedly accrued. And the next thing he did, which was a legal error, was to say that Orsini is not entitled to claim prejudice for the things he did or the expenses he incurred after he knew about HMI's lien claim. And that occurred because the notice of lien claim was filed in November of 1997. Orsini had actual knowledge of that, according to the record in the findings, June 29, 1998. Up to that point, he had spent $68,000, according to the record, in pursuing the vote. After that, he pursued about another $65,000 in pursuit of the vassal before October of 2001, when HMI finally acted. Counsel, wouldn't that be a calculated risk if you know someone else is asserting a lien claim against the vote, though? Well, that's not what the cases say. And in the case of a maritime lien, which is supposed to be pursued promptly, other creditors are reasonably entitled to think that in all likelihood the owner of the boat has satisfied the lien. It just hasn't been released or has made satisfactory arrangements. What case do you rely upon to say that prejudice ensues when an entity is pursuing collection from the boat in the light of the existence of another lien claim? What case do you rely upon to support that proposition? Well, the Madrona case, for example, says that efforts by the claimant to work with the owner of the boat and to try to get satisfaction from the owner do not stave off the prejudice incurred by a third party, such as Garcini, who's not a party to those negotiations. Did you cite that in your brief? Oh, the Madrona case is cited, yes. It's M-A-D-R-O-N-A. It's a Seattle Bank versus Madrona. It's the District of Alaska case. It's a different case. Yes, Your Honor. It's not a binding precedent. No, Your Honor. It relies upon a number of Ninth Circuit cases, however. Well, if it has a governing precedent, you go to Ninth Circuit. You don't go to some district court. Right. But the facts of the Madrona case were much more like this. The Madrona says an excuse for delay is not sufficient as to an innocent third party, which is a little different. Well, you're suggesting that Mr. Garcini is not innocent. Well, I'm just saying he had not. That was my point in the beginning, is that he knew of the other lien claimant, and this seems to suggest that there is someone who is totally unknowledgeable about the prior lien, which would make more sense. If someone is totally unknowledgeable about the prior lien and then incurs some cost, that would not negate the prejudice. And that's what Madrona seems to say. So that's the case that you're relying upon? Well, the better cases, the more recent Ninth Circuit cases that aren't in a maritime context but develop the latches issue extensively would be the Danjack case and the Jarrell case, in which the court, the Ninth Circuit, went so far as to say in an infringement situation that even though the defendant, such as Garcini, knows about the other party's rights, knows that he's infringing, therefore acting wrongfully, that that is not a bar to prejudice. Well, wouldn't you say maritime liens are a special animal? Well, they're a special animal, but the latches analysis is not any different between maritime cases and, in particular, the infringement cases. And you'll see, for instance, Brown v. Pater is cited either in Danjack or Jarrell. And the latches law goes back and forth between these variety of cases and others, for that matter. So the latches analysis is not special in maritime cases. It's pervasive from one category to another. Counsel, what countervailing evidence did you present in the summary judgment context? I'm assuming that the Honolulu Marine put in an affidavit saying you provided this service and were entitled to a lien. What did you put in to raise a material issue of fact? Primarily, we relied upon the deposition of their own witness, who said, gee, I really don't know who ordered this part. I really don't know who did the work. But if he relied upon the owner to say that the owner authorized all of this work, how was a material question of fact raised? Well, the question of fact has to go with, I mean, he had nothing to show that the owner approved any of this. There was no contract. There was no signature by Ivan Toyama. There was no affidavit saying the owner authorized the work? I think that generally they made a conclusory statement to the effect that they believed Ivan Toyama was the owner. Believed, no assertion, no positive assertion that the owner authorized the work? You know, I'm going to have to look to be sure about that, and I'll try to come back to that. All right. The other clear legal error that the judge committed in his conclusions of law has to do with claiming that Orsini had constructive notice of HMI's position by reason of the notice of lien claim filing. That is absolutely not the law we cited in our brief. The statement of the maritime lien statute to the effect that the filing of a notice of lien claim does not give constructive notice to the world, but it is there to give a preferred mortgagee priority, and we don't claim to be a mortgagee, and neither does HMI. And a notice of lien entitles the filer to be notified when the vessel is arrested. But other than that, it's not a constructive notice statute, such as Judge Kaye, who has a real estate lawyer background, and probably assumed from his familiarity with real property laws. I'll reserve the balance of my time if I may. All right. Counsel? Good morning, Your Honors. Brian Hull on behalf of the plaintiff, appellee, Honolulu Marine, DBA Kiwala Shipyard. Preliminarily, Your Honors, one thing I'd like to ask the court to focus on in reviewing the record is the care and deliberateness with which Judge Kaye handled this case and ruled on the various decisions before him. If you look at the pleadings filed, he allowed counsel every opportunity to thoroughly brief every single issue that came before him from the beginning of the case to the day it finished. If you look at the orders entered in, as far as the substantive decisions that had to be made, he wrote every single one of those. They're chocker-blocked full with cases, thorough analysis. For counsel to file this appeal and suggest that he made an error, I think personally is absurd. Beyond that, I think my brief covers all the issues. Would you please direct us in the record for the affidavit in support of the summary judgment of the authority for making the repairs or providing the services that form the basis of the lien? Your Honor, I would have to pull the motion that we filed and the affidavit and the invoices for the repair work would be attached to that. Where is that in the record? Okay. Excuse me, Your Honor. I'm going to have to flip through the attachments that we filed with the court. If you would indulge me for a moment. Sorry. It would be in court record 76, Your Honor, which is Honolulu Marine, separate and concise statement of facts along with the affidavit of David Oya. Is that in the excerpts of record that were provided to the court? It would be in Honolulu Marine, excerpt of record volume 1 court record 76, Your Honor. It's about in the middle of that. I was looking for that. I don't see a court record 76 in volume 1. I can give you my... It's in the supplemental excerpts of record? No. It's volume 1. I can show you what I have, Your Honor. I don't see it in what we have. 76. Do you have that? Am I reading this right? It says court record 76. Yeah, court record 76 is different from excerpts of record, what you provided to us. That's what I'm asking you. In what you provided to us, where can we find it? Can I just show it to you? Well, I think Judge Noonan has it. I don't think you understand what you're saying. When you prepare an appeal, you take excerpts of that as your record on appeal. It's in the record, but it's not in your excerpt. All of the judges don't get the entire record. We only get what you designate in the entire court. What I did designate and I attached as part of my excerpts of record for volume 1 is the separate and concise statement of facts which includes the affidavit of David Oya for Kewala Shipyard's motion for summary judgment. What's your response to opposing counsel's contention that the affidavits were not sufficient to defeat his argument that there was a genuine issue of material fact? I'd say that's absolutely not true. What did those affidavits pinpoint the authority for undertaking the work for which you filed them? First of all, Your Honor, they were brought to the shipyard. The repairs were ordered by Mr. Toyama. There was never any testimony, affidavit, any conflicting or contrary statement by Mr. Toyama or any other representative of the owner that the services were not authorized and that the work was done unilaterally at the shipyard's discretion. So, I mean, for Mr. Lees to stand up and tell the court that there wasn't any proof that the work was authorized I think is an incorrect statement. It's not true. And the affidavit in paragraph 5, Mr. Oya's affidavit in paragraph 5 says, I understood Island Marine Transportation Limited Partnership owned the NOEO and Ivan Toyama was a limited partner. Ivan Toyama in his capacity as a limited partner authorized the services we provided to the NOEO. No one has ever told me that Ivan Toyama was not authorized to procure services or materials or incur a lien on the vessel and that I believe Ivan Toyama still has the authority to procure services and materials even through today. So, I mean, that's black and white. Questions? Questions? Thank you, counsel. Rebuttal. Thank you, Your Honor. I'll cut to the point. Please proceed. Just to try to help avoid confusion, the appellant filed excerpts of record in two volumes, volume 1 and 2. And then Mr. Ho on behalf of HMI filed a separate volume which he calls volume 1 and I believe it's the only volume he filed. And so in his excerpts he does indeed have court record 76. These excerpts are not numbered from 1 to 200 by page, but they are tabbed. Now, that's where his only affidavit in support of the motion for summary judgment lies and in response, Judge Rawlinson to your question about whether it's specifically avert that Ivan Toyama had authority, Mr. Ho correctly, I think, pretty much read paragraph 5 to you. I have it now. Yeah, where he says, I understood that Island Marine Transportation Limited Partnership owned the boat and that Ivan Toyama was a limited partner. It does say Ivan Toyama authorized the services. Then he says no one ever told me he was not authorized. And he concludes, I believe  that yes, that's what he said, still has the authority. Implying that he had it at a prior time. Right. But your question was was his affidavit in any sense qualified? And it was qualified because he's saying I understood. Well, my question was whether or not there was an affidavit saying the authority under which the repair services were provided. And that was his answer to that question. That's all there is. There's no contract. Nothing will buy. His affidavit says this man was a limited partner. And as a matter of law, limited partners don't normally have authority. So right there, he's at best made a very... But he said nobody told him that he wasn't authorized and they brought the ship into the dry dock for repairs and there was nothing, there was no affidavit, counter affidavit saying that Mr. Toyama was not authorized. So that's what he's going on. That's their position. And you present to rebut that. I mean, I think the first question goes to whether they even brought forward sufficient evidence in the first place to cross the threshold of requiring... Well, why isn't there evidence of apparent authority? They bring the ship in. The man in charge says do this. Isn't the authority apparent? I think that's a good argument for them to make. All right, but why do you dispute it? Well, the authority issue tends to go more to specific items and services. Why? Well, because there's a quantity that has to be determined. The court determined that they're entitled to a $50,000 lien. And I don't dispute that they did furnish some goods and services on the authority of Ivan Toyama. I don't dispute that, Your Honor. But the question is, was everything so furnished? And in response to this, and this is at Court Record 112, we furnished the responsive, concise statement of facts. And on pages 2 and 3 of that, we brought to the Court's attention specific facts, either relating to things that they had not established affirmatively or relating to things that we were establishing through the same person, Mr. Hoya's, testimony. Because we took his deposition. I noted that it was not made for by HMI employees or by third party contractors or by persons unknown to Mr. Hoya. There is no evidence presented on summary judgment whatsoever that Ivan Toyama authorized HMI to engage subcontractors or that Ivan Toyama or the owner of the vessel authorized markups to be charged. It wasn't just the money that HMI paid to third party contractors. In addition to that, HMI was charging a bonus. There's no authority under the law of necessaries entitling HMI to a lien for that. You know what the difficulty is, and I don't know whether it's so or not, but as I understand the record, you question the authority, and I'm not suggesting you can see it, but you see that there's reason to believe that there was apparent authority. There was some authority. So when there is that established, then you look at the record to see did anybody refute this? And if you find no refutation, then you've made out your problem face to face. That's what I think he's relying on. I understand. That's what I think is the status of this record, unless you point to some something that I haven't seen. Yes, and you asked the same question that we put up in response to this to create a genuine issue of fact. And the answer is in court record 112, which is our responsive concise statement. And if you look just at the pages two and three, where we respond to their fact statements four and five, we give detailed deposition references and we summarize what the evidence is, which for example in some instances, goods were furnished without any indication as to who ordered them or who picked them up from HMI. Though requested through formal discovery, the documentary record does not substantiate what labor services were performed or who ordered them. And yet about half of the total bill is for labor and third party subcontractors and markups. So they're not entitled to a lien for those items unless they can put on their proof, and we show the absence of proof. And similarly we go in to rebut their statement five and go through the details about how they were not properly substantiated. Thank you counsel. Thank you family. Thank you to both counsel. The case just argued is submitted for decision by the court. The final case on calendar for argument is Taguchi v. Cedaris. ... ... ... ... ... ... ...
judges: Silverman, W. Fletcher, Rawlinson